Jacob Lutsky, J.
In this pending proceeding to terminate the parental rights of Jacqueline J. pursuant to article 6 of the Family Court Act, a motion has been made by the foster parents of the child for an order compelling disclosure of the case records of the Jewish Child Care Association and the Department of Social .Services pertaining to the child and her parents.
*255 This motion is made apparently on the assumption that the foster parents can intervene in this proceeding, as a matter of right, as of April 27, 1973, when they will have had custody of the child in question for 24 months. Since the hearing is scheduled for April 30, 1973, the motion is made now to avoid any further adjournments.
The court sees no objection to the motion being made at this time and will decide the motion as if it were made on April 27, 1973.
Before a decision can be made on this motion, it is necessary, however, for the court to determine whether the foster parents have a right to intervene in this proceeding.
The foster parents base their absolute right of intervention on the provisions of subdivision 3 of section 383 of the Social Services Law, which reads in part as follows: “ Foster parents having had continuous care of a child, for more than twenty-four months, through an authorized agency, shall be permitted as a matter of right, as an interested party to intervene in any proceeding involving the custody of the child.” (Emphasis supplied).
We come now to the basic question. Is the pending proceeding a “ custody ” proceeding contemplated by subdivision 3 of section 383 of the Social Services Law?
In an earlier motion made by the foster parents to intervene, addressed to the court’s discretion as they had had custody for less than 24 months, this court denied the motion for reasons given in its decision of November 15, 1972.
This court is not convinced, after a careful analysis of the statutes, that it should change its decision even after 24 months have elapsed. The same reasons exist for denying intervention after 24 months as they did at the time of the original motion.
The court believes that all of the parties, including the foster parents, are entitled to all of the rights provided them by law, express or implied. If the only reason for nonintervention were the time limit, this court would have ignored it and authorized intervention as a matter of discretion. There is nothing magical or significant about the 24-month period except that the Legislature had to select a time limit to avoid the unfortunate consequences of lengthy placements. It could just as logically have set the period as one year or 18 months. If the foster parents have any rights -of intervention in the instant type of case, they are entitled, as a matter of equity, in this court’s opinion, to intervene at any time.
*256 However, the court does not agree that the provisions of subdivision 3 of section 383 of the Social Services Law apply to a proceeding to terminate parental rights under article 6 of the Family Court Act by reason of permanent parental neglect. In fact this proceeding is more often referred to as a permanent neglect law than as a proceeding to terminate parental rights or parental custody.
For a concise history of the development of the law resulting in the present permanent neglect statute (art. 6), see Matter of Barbara P. (71 Misc 2d 965).
The foster parents rely on the use of the word “ custody ” in article 6 to justify their contention that a permanent neglect proceeding is a custody proceeding.
Custody as used in the permanent neglect statute refers to natural parental rights and yet when used in the usual habeas corpus or divorce proceeding, it does not mean natural parental rights. If custody is awarded to a spouse, it does not terminate the parental rights of the other spouse.
It would appear, therefore, that although “ custody ” is used in the permanent neglect law, it does not necessarily follow that it is a custody proceeding.
A literal construction is not necessarily conclusive in interpreting legislation. Statutes must be read as a whole and not word by word (see McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 111).
Illustrative of the foregoing is that in many cases the courts have construed mandatory words to be permissive and permissive words to be mandatory (see Statutes, § 177).
Based on the foregoing rules of1 construction, a reading of the pertinent statutes indicates that a permanent neglect proceeding particularly in its adjudicatory phase, is not a custody proceeding contemplated by subdivision 3 of section 393 of the Social Services Law.
In referring to a permanent neglect proceeding, the following statement from subdivision [2] of section 375.02 of Boardman’s New York Family Law, referring to the permanent neglect law as The Custody Termination Proceeding, is pertinent: “ As with other Family Court proceedings, such as support, family offenses, neglect and delinquency, the hearing is divided into two parts. The adjudicatory hearing is for the purpose of determining whether or not the parent has been guilty of permanent neglect. An affirmative finding of neglect must be based upon a fair preponderance of the evidence. The dispositional hearing is for the purpose of determining whether the best *257 interests of the child require that the parent’s custody he permanently terminated, and if so, what disposition shall be made of the child with respect to custody.”
It appears clear, despite the use of the word custody in the title, that in the adjudicatory hearing there are no issues as to custody. Only if permanent neglect is found in the adjudicatory hearing, then the issue of custody arises in the dispositional hearing at which time it is the holding of this court that the foster parents have a right to intervene.
In Matter of Lewis (41 A D 2d 619) a proceeding purporting to terminate custody of an alleged permanently neglected child was brought. The Appellate Division affirmed and modified the lower court holding that the order at the fact-finding hearing terminating custody was premature. Though the order provided for a future dispositional hearing, the disposition itself was made in that very order by directing permanent termination of custody. This may not be done until the conclusion of a dispositional hearing, to determine the child’s best interests.
The title of article 6 of the Family Court Act also seems to indicate that a permanent neglect proceeding is not a custody proceeding. It reads as follows: Permanent Termination of Parental Eights, Adoption, Guardianship and Custody.
There are four parts to this article. Part 1 is Permanent Neglect, Part 2 is Adoption, Part 3 is Custody and Part 4 is Guardianship.
The article thus treats custody and termination of parental rights due to permanent neglect as two separate and distinct proceedings.
Eecent amendments to the Social Services Law would also indicate that this is not a custody proceeding.
Section 392 of1 the Social Services Law, permitting the review of foster care of children in the Family iCourt by foster parents, with whom a child has resided over 24 months, does not make any reference to custody proceedings. In fact, paragraph (c) of subdivision 7, which provides for the various types of relief the court may grant, specifically refers to “ a proceeding to legally free such child for adoption ”.
Further, there is nothing in section 383 of the Social Services Law dealing with the adoption of children by foster parents, which in any way specifically states a permanent neglect proceeding is a custody proceeding.
Additional evidence that a permanent neglect proceeding is not a custody proceeding is found in the fact that foster parents are given rights similar to that sought here as well as additional *258 rights in a hill introduced in the 1973 Legislature (Sen. No. 2928; Assem. No. 5150). There would be no need for this bill if it can be done under existing law as a custody proceeding.
The sponsors of the laws which provide for the intervention of foster parents in custody proceedings are quoted as saying the purpose of these laws is to provide a “ champion ” on behalf of the child. If this is so, then they certainly did not intend to have subdivision 3 of section 383 apply to a permanent neglect proceeding. In such a proceeding the child has a “ champion ’ ’— the Law Guardian who is designated by this court to represent the interest of the child. This conforms to the general practice that the Law Guardians shall represent children in neglect proceedings at the trial and on appeal, if necessary. The office of the Law Guardian is perfectly capable of championing the child’s interests. It has an investigating staff and competent lawyers.
The court is 'certainly sympathetic to the feelings of the foster parents, the natural parents and the petitioner. Of paramount concern, however, is the welfare of the child. The assignment of the Law Guardian will secure the welfare of the child.
The foster parents are not left without any remedies. They have the power to obtain assistance from the courts pursuant to sections 392 and 383 of the Social Services Law. In fact, the court has been informed that proceedings have already been instituted by the foster parents pursuant to section 392 of the Social Services Law for a judicial review of the child’s placement.
The court has previously pointed out that the foster parents may also intervene in the dispositional hearing if a finding of permanent neglect is made at the adjudicatory hearing. Custody then becomes an issue in; the dispositional hearing (Family Ct. Act, §§ 631, 633, 634). Application to intervene at that stage of this proceeding is authorized upon written notice to the court by the foster parents or their attorney without the necessity of the submission of any formal motion papers.
During the adjudicatory hearing, the foster parents can be of assistance to the court as witnesses and they can be called by the parties or the Law Guardian representing the child. The appearance of the foster parents in the adjudicatory hearing, as a party, would introduce unnecessary issues and possibly create bitterness harmful to all concerned.
There appears to be some concern by the foster parents that this proceeding has not or will not be diligently presented. It would appear that this is not the situation here. The petitioner *259 did not unduly delay instituting this proceeding. A final determination after a hearing would have been made long before the 24 months since placement. Unfortunately the serious and protracted illness of one of the attorneys caused the delay.
The court wishes to point out that, although it has expressed sympathy and concern for the interests of the foster parents, it has not in any way made any decision as to any permanent neglect by the natural parents justifying a termination of their parental rights. This question will be decided by the court after a full and complete hearing.
For the foregoing reasons this court denies the foster parents’ right to intervene in the adjudicatory hearing but grants the foster parents the right to intervene in the dispositional hearing if a finding of permanent neglect is made.
In the light of the court’s decision on intervention, the foster parents’ motion for discovery and inspection is denied as being academic.